UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sandra E. Allwood,                                                    Civ. No. 14-3113 (PAM/TNL)

               Plaintiff,

v.                                                    **MEMORANDUM AND ORDER**

Carolyn W. Colvin, Acting
Commissioner of Social Security,

               Defendant.

---

This matter is before the Court on the parties' cross-Motions for Summary Judgment. For the reasons that follow, both Motions are denied.

**BACKGROUND**

Plaintiff Sandra Allwood applied for disability insurance benefits on October 19, 2011, alleging a disability onset date of July 1, 2009.[1] (Admin. R. at 219 (Application for Disability Insurance Benefits dated Oct. 19, 2011).) Her application was denied initially and on reconsideration, and the matter was referred to an administrative law judge (ALJ) for a determination. After a March 21, 2013, hearing, the ALJ found that Allwood suffered from three severe impairments: degenerative disc disease, degenerative joint disease, and morbid

---

[1] The ALJ's decision in this matter lists Allwood's application date as October 6, 2011, and her disability onset date as September 4, 2009. (Admin. R. at 18.) The Court finds no explanation in the record for the discrepancy in dates between Allwood's application for benefits and the ALJ's decision, although Allwood's brief also claims that she became disabled on September 4, 2009, which is apparently the last day she could work. (Pl.'s Supp. Mem. (Docket No. 13) at 4.) The brief lists her application date as October 5, 2011. (Id. at 5.)

obesity. (Id. at 20.) He also found, however, that none of these impairments were disabling; that is, he determined that Allwood retained the residual functional capacity to perform light work despite her impairments, and that she was not therefore entitled to disability benefits. (Id. at 21.) Allwood unsuccessfully appealed the ALJ's decision to the Appeals Council, and this litigation followed.

Allwood first injured her lower back in 2001. (Id. at 382.) In the summer of 2009, while working as a Certified Nurse Assistant at a nursing home, Allwood either re-injured her back or aggravated the pre-existing injury. (Id. at 514.) Allwood was eventually diagnosed with a small tear of the annulus at her L4-L5 vertebrae on her left side, with a mild amount of narrowing of the space around the L4 nerve root. (Id. at 539.) A review of Allwood's MRI results in 2010 also showed that she had sclerosis of her sacroiliac joints bilaterally—that is, that the joints between Allwood's sacrum and ilium in her pelvis showed evidence of increased bone formation. (Id. at 560.) Throughout the fall and early spring of 2010, Allwood's physician's noted that she was capable of returning to work in some capacity, either with restrictions (id. at 521) or in a sedentary/clerical setting (id. at 544). An independent medical examination performed in April 2010 found that Allwood could return to work full time with some restrictions. (Id. at 568.) And indeed, Allwood did return to work at least part-time in July 2010 for several months, although record evidence of this is sparse. (See id. at 50, 52-53, 68-69 (Hr'g Tr.).)

In November 2010, one of Allwood's treating physicians noted that she was working with restrictions and determined that the work restrictions should continue. (Id. at 572-73.) But by early 2011, another physician reported that Allwood characterized her back pain as "excruciating." (Id. at 618.) She was referred to a surgeon to evaluate the possibility of surgery to alleviate her symptoms, and the surgeon recommended that she stay off work for a month pending the surgery. (Id. at 650.)

Allwood never had surgery on her back, either because her obesity made such surgery difficult or because insurance would not pay for the surgery. (Id. at 50.) Another independent medical exam in March 2011 doubted the efficacy of surgery, finding that there was a "histrionic component to her pain." (Id. at 658.) Allwood's surgeon vehemently disagreed with the independent medical examiner, however, writing that Allwood needed surgery and that her complaints of pain were consistent with what the MRIs and physical assessments showed. (Id. at 702.) Allwood contends that she cannot work because of the pain she suffers, and thus that she is entitled to disability insurance benefits.

## DISCUSSION

### A.   Standard of Review

This Court's review of the Commissioner's decision is limited to determining whether that decision is "supported by substantial evidence on the record as a whole." McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000).

> Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. In determining whether existing evidence is substantial, we

3

> consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome or because we would have decided the case differently.

Id. (citations omitted).

Allwood raises several challenges to the ALJ's determination. First, she argues that the ALJ improperly considered Allwood's attempted return to work in 2010 as something other than a permissible trial work period, and that this error caused the ALJ to misjudge the remainder of the evidence of disability. Next, Allwood contends that the ALJ erred in failing to give controlling weight to the opinions of her treating physician, Dr. Svetlana Zaydman, and failed to evaluate those opinions properly in light of other evidence in the record. Finally, Allwood asserts that the ALJ's determination of her residual functional capacity was erroneous because it improperly discounted her subjective complaints of pain and because it did not fully set forth all of the impairments found in the medical evidence.

**B.     Trial Work Period**

In July 2010 and again in 2011, Allwood tried to return to work. (Admin. R. at 68-69.) She argues that the ALJ erred in considering her attempted return to work as evidence that she was not disabled, contending that he should instead have evaluated whether she was entitled to a trial work period and, if so, whether her attempts to return to work qualified as a trial work period. Under the regulations, a trial work period cannot be considered "as showing that [the claimant's] disability has ended until [the claimant] has performed services in at least 9 months." 20 C.F.R. § 404.1592(a). There is no dispute that Allwood's attempts

4

to work did not span a total of nine months.

Although the argument is difficult to decipher, Allwood's challenge to the ALJ's decision in this regard appears to be based on her belief that the ALJ could not consider any work she did in 2010 or 2011 because the regulations only allow the Commissioner to rely on her attempts to return to work "after the trial work period has ended." Id. Because Allwood did not reach the nine-month trial-work threshold, she contends that the ALJ should not have considered her attempts to return to work for any purpose in evaulating her case.

As an initial matter, it is not clear whether Allwood's attempted return to work in July 2010 can be part of any trial work period. A disability claimant is not entitled to a trial work period within the first 12 months of the alleged onset of disability. Id. § 404.1582(d)(2)(iii). The regulations specifically provide that a claimant who performs work "demonstrating the ability to engage in substantial gainful activity within 12 months of the onset of the impairment(s)" is not entitled to a trial work period. Id. Thus, if the ALJ found that Allwood's attempted return to work in July 2010 "demonstrated an ability to engage in substantial gainful activity," the regulations would mandate a finding that she was not entitled to a trial work period and the ALJ could consider any work she performed without first evaluating whether that work qualified as trial work.

But the ALJ did not make any determination whatsoever as to whether any of Allwood's attempts to return to work either did or did not qualify as a trial work period. As Allwood contends, this failure is significant because the ALJ discussed and appeared to rely on Allwood's return-to-work attempts, at least in part, in determining that she is not disabled.

(See Admin. R. at 32 (ALJ decision) (Allwood's "impairments do not appear to prevent her from engaging in work activity, as evidenced by her ability to return to her work as a CHA in 2010, working at light duty, despite her reported injury and resultant pain and symptoms").) But the regulations are clear that the Commissioner "will not consider [trial work] as showing that [a claimant's] disability has ended until [the claimant] has performed services in at least 9 months." 20 C.F.R. § 404.1592(a). It may be that Allwood's July 2010 work precludes her from any trial work period and thus the ALJ's reliance on her attempts to work comports with the regulatory framework. On the other hand, it may be that her July 2010 work did not preclude her from a trial-work period and the ALJ's reliance on her two attempts to return to work is contrary to the regulations. Regardless, the ALJ's failure to consider the trial-work issue is not harmless error because, as Allwood argues, his consideration of her two return-to-work attempts simply cannot be segregated from the remainder of his discussion of Allwood's disability. (Admin. R. at 32.) In other words, the ALJ's discussion of Allwood's attempts to return to work are an integral part of his determination that Allwood was not disabled. If his consideration of the issue was contrary to the regulations, then his ultimate conclusion is in question.

Thus, the case must be remanded to the ALJ for a determination of whether Allwood was entitled to a trial-work period and, if so, whether such trial-work period has ended so that the Commissioner may consider whether her attempts to return to work demonstrate that her alleged disability ended after the trial work period.

**C.     Treating Physician's Opinions**

The ALJ's consideration of the medical records from Allwood's treatment at the Britton Center also warrants brief discussion. The ALJ emphasized repeatedly that Allwood's records indicated that her pain was "controlled on current medication." (See, e.g., Admin. R. at 28-30.) He also found significant that Allwood admitted to not taking medication on several occasions. But the medical records on which the ALJ relies are not as unambiguous as the ALJ's discussion suggests.

Although most of Allwood's treatment notes from the Britton Center do state that her pain is controlled with medication, the records go on to state that she has generalized pain 100% of the time, and in most of the records, she lists her daily, average pain in the "severe" range of at least 7 out of 10. (See id. at 834-35 (Mar. 13, 2012, treatment note, stating "Symptoms controlled on current medication" but "Generalized pain Constantly (100% of the time)" and reported average pain of 10 out of 10); id. at 830-32 (Mar. 21, 2012, treatment note, stating "Her pain remains constant" and reporting average pain of 7 out of 10); id. at 825-26 (Apr. 4, 2012, treatment note, stating "Symptoms controlled on current medication" but "Generalized pain Constantly (100% of the time)" and reported average pain of 6 out of 10); id. at 875-77 (Aug. 28, 2012, treatment note, stating "Symptoms controlled on current medication" but "Generalized pain Constantly (100% of the time)" and reported average pain of 8 out of 10); id. at 870-72 (Sept. 13, 2012, treatment note, stating "Symptoms controlled on current medication" but "Generalized pain Constantly (100% of the time)" and reported average pain of 9 out of 10).) And Allwood's failure to take medication is often explained

in the treatment notes: she complains that the medication upsets her stomach, or she does not have money to pay for medication.

Had the ALJ evaluated the entire medical record, including Allwood's reported pain levels, the comments that her daily pain was usually severe, and her reasons for failing to take medication, he may not have so fixated on the "controlled on medication" notation. Again, it may be that the ALJ would have determined that Allwood is not disabled even with a more thorough view of her medical records, but it may be that he would not. On remand, the Commissioner should explain or at least make note of the plethora of record evidence indicating that Allwood suffers from severe pain.

Finally, the ALJ found significant that Allwood tested positive for THC in October 2012, and at the same time tested negative for her prescription medications. (Id. at 29.) Had the ALJ thoroughly examined Allwood's records, however, he would have seen that her next appointment noted that the "final" analysis of the positive urine sample revealed that, in fact, there was no THC present, but that all of her prescription medications were present. (Id. at 1024.) Thus, the initial reading was a false positive for THC, and the ALJ's failure to take this into account in his decision is yet more evidence that his decision is not supported by substantial evidence.

**D.    RFC Determination**

Having determined that a remand is necessary to address the trial-work period and a more searching review of the medical records, the Court will not address Allwood's challenge to the ALJ's RFC determination.

**CONCLUSION**

A remand to the ALJ is required in this case. See 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). On rehearing, the ALJ must determine whether Allwood is entitled to a trial-work period and, if so, whether such trial-work period has ended so that the Commissioner may consider whether her attempts to return to work demonstrate that her alleged disability ended after the trial work period. The ALJ should also more thoroughly examine the medical records to better account for the pain Allwood claims to suffer.

Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendant's Motion for Summary Judgment (Docket No. 15) is **DENIED**;

2. Plaintiff's Motion for Summary Judgment (Docket No. 12) is **DENIED**; and

3. This matter is **REMANDED** for rehearing before the ALJ under sentence four of 42 U.S.C. § 405(g).

Dated: April 24, 2015

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge